UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| WILLIAM W. ELLIS, *Pro Se,* | ) | Case No.: 1:13 CV 1058 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| GARY MOHR, *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |


## I.  INTRODUCTION

Currently pending before the court in the above-captioned case is Defendants' Gary Mohr, Alan Lazaroff, and Terry Tibbals (collectively, "Defendants") Motion for leave to file Amended Answers to Amended Complaint (ECF No. 50) and Defendants' Motion for Summary Judgment. (ECF No. 51.) *Pro se* Plaintiff William Ellis ("Plaintiff") filed a Response (ECF No. 54) to Defendants' Motion for Summary Judgment on March 2, 2017. Defendants filed a Reply (ECF No. 55) in Support of the Motion for Summary Judgment on March 10, 2017.  For the reasons set forth below, the court grants Defendants' Motion for leave to file Amended Answers to Amended Complaint. The court grants in part and denies in part Defendants' Motion for Summary Judgment.

## II.  BACKGROUND

On May 9, 2013, Plaintiff filed this civil action pursuant to 42 U.S.C. § 1983 against

Defendants, seeking injunctive relief[1] from and monetary compensation for the alleged violations of Plaintiff's constitutional rights during his confinement at Mansfield Correctional Institution ("Manci"). (Compl., ECF No. 1.) Plaintiff alleges these violations were a result of Defendants' implementation, enforcement, and maintenance of the unconstitutional Level 3B privilege system pursuant to the policy of the Ohio Department of Rehabilitation and Correction ("ODRC"). (*Id.* at 2-5.) Among his claims, Plaintiff alleges violations of the prohibition of the Eighth Amendment of the U.S. Constitution against cruel and unusual punishment. (*Id.* at 6.) According to Plaintiff, these violations resulted in physical, emotional, economic, and psychological damage to himself for which he is entitled to compensation. (*Id.*) Specifically, Plaintiff alleges he was improperly confined to a cell with another inmate for over 20 hours a day; denied access to the courts; denied adequate communication with his family, an attorney, and clergy; subject to an ineffective institutional grievance process; and received food, shower, and housing services below constitutional standards due to his status as a Level 3B inmate. (*Id.* at 3-5.)

### III. LAW AND ANALYSIS

#### A. Defendants' Motion to Amend Answers to Amended Complaint

Before turning to Defendants' Motion for Summary Judgment, the court will first address Defendants' pending Motion for leave to file Amended Answers to Amended Complaint. (Defs.' Mot. Am. Answers, ECF No. 50.)

---

[1]     Here, Plaintiff's request for injunctive relief is rendered moot by his release from incarceration. *See* Address Change Notice, ECF No. 30; *Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir. 2003) (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (prisoner's claim for injunctive relief brought under § 1983 against prison officials became moot once prisoner was transferred from the prison of which he complained to a different facility).

The Federal Rules of Civil Procedure provide that, outside of an initial amendment as of right, a defendant may amend his or her pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Rules further state that "[t]he court should freely give leave when justice so requires." *Id.* To determine whether "justice so requires," the court must look at the substance of the proposed amendment. *Roskam Baking Co. v. Lanham Mach. Co.*, 288 F.3d 895, 906 (6th Cir. 2002). The decision whether to grant leave to amend is within the trial court's sound discretion. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 551 (6th Cir. 2008). But the court should deny leave to amend if it finds undue delay, lack of notice, bad faith, dilatory motive, repeated failure to cure deficiencies, or futility. *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002). Courts find that proposed amendments are futile "if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Coe v. Bell*, 161 F.3d 320, 341-42 (6th Cir. 1998).

The Supreme Court has explained that a party "ought to be afforded an opportunity to test [his or her] claim on the merits" if the claim is "a proper subject for relief," *Foman v. Davis*, 371 U.S. 178, 182 (1962), and that "the purpose of pleading is to facilitate a proper decision on the merits," not to promote "a game of skill." *Conley v. Gibson*, 355 U.S. 41, 48 (1957). Additionally, the Sixth Circuit has noted that cases "should, as far as possible, be determined on their merits and not on technicalities." *Cooper v. Am. Emp'rs' Ins. Co.*, 296 F.2d 303, 306 (6th Cir. 1961). As a result, there must be "at least some significant showing of prejudice to the opponent" if the motion is to be denied. *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986)).

In January 2014, Plaintiff filed an Amended Complaint (ECF No. 8) against Defendants. In response, in June 2014, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint for

failure to state a claim, or alternatively, a Motion for a more definite statement. (ECF No. 13.) In October 2014, Plaintiff filed a Motion for leave to amend his Amended Complaint (ECF No. 15) and, subsequently, Plaintiff filed a Second Amended Complaint. (ECF No. 17.) In November 2014, Defendants again filed a Motion to Dismiss for failure to state a claim (ECF No. 19), which was denied. (Order Den. Defs.' Second Mot. to Dismiss, ECF No. 25.) In March 2015, Defendants filed Answers to Plaintiff's amended pleadings. (ECF Nos. 26, 27, and 28.) On December 15, 2016, six months after the court's due date to amend pleadings (CMC Order, ECF No. 42), Defendants filed a Motion for leave to file Amended Answers to Amended Complaint (ECF No. 50) to include an additional affirmative defense of failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"). Defendants then relied upon this defense in their Motion for Summary Judgment. (ECF No. 55.) On January 17, 2017, Plaintiff filed a Motion for Extension of Time (ECF No. 53) to respond to both of Defendants' Motions. Although granted an extension until February 1, 2017, Plaintiff failed to respond to Defendants' Motion to amend their Answers. Plaintiff did, however, timely file a Response to Defendants' Motion for Summary Judgment. (ECF No. 54.)

Defendants contend justice requires they be permitted to amend their Answers to assert an additional affirmative defense. Defendants assert that the amendment will not be futile because the PLRA requires mandatory exhaustion of administrative remedies before a prisoner may file a suit with respect to prison conditions. (Defs.' Mot. to Am. Answers 3.) Thus, given Plaintiff's incarceration at Manci at the time of the filing of his Complaint, a finding that Plaintiff failed to exhaust his administrative remedies would completely preclude Plaintiff's claims. (*Id.*) Defendants also contend good cause exists because Defendants' current counsel, despite also being a member

of the Office of the Attorney General, was not assigned to this case until on or about September 28, 2016. (*Id*. at 4.) However, upon learning that the affirmative defense was absent from Defendants' pleadings, Defendants' current counsel immediately "took action," approximately two months later. (*Id.*) Finally, Defendants' contend Plaintiff will not be prejudiced by the amendment because Plaintiff had the opportunity to address the defense in his Response to Defendants' Motion for Summary Judgment. (*Id.*)

The court must first note that reliance on the ineffectiveness of prior counsel as a basis for why Defendants' prior pleadings did not include a failure to exhaust defense is a relatively weak excuse. Despite this fact, the court finds that allowing Defendants leave to amend their answers is what "justice requires," albeit barely. Notwithstanding Defendants' untimeliness, the court finds that the affirmative defense of failure to exhaust administrative remedies pursuant to the PLRA is a relevant addition to the Defendants' Answers that will not result in futility, undue delay, or prejudice. The PLRA provides, in relevant part,

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a)

Given that the PLRA governs the circumstances under which an inmate may file a §1983 claim, the amendment is directly applicable to the facts of this case and including this defense in the Defendants' answers will assist the court in coming to a proper decision on the merits.

Further, the amendment will not cause undue delay, nor will it prejudice the Plaintiff because Plaintiff was given ample opportunity to respond to the issue. Indeed, Plaintiff was given an

extension of time to respond to Defendants' summary judgment Motion, and in his response, Plaintiff addresses the issue of exhaustion. (Pl.'s Resp. Defs' Mot. Summ. J., ECF No. 54, at 2.) Plaintiff was also given an extension of time to respond specifically to Defendants' Motion to file amended answers, though he failed to do so.

For the foregoing reasons, the court grants Defendants' Motion for leave to file Amended Answers to Amended Complaint.

### B. Defendants' Motion for Summary Judgment

On December 15, 2016, Defendants filed a Motion for Summary Judgment (ECF No. 51) and submitted a series of exhibits in support. (Exhibits A, B, & C, ECF No. 51.) Plaintiff filed a Response to Summary Judgment (ECF No. 54) relying on facts and documentation alleged in his original and amended complaints. In support of its Motion, Defendants filed a Reply (ECF No. 55) asserting that Plaintiff had failed to allege specific facts in the record that create a genuine dispute of material fact.

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by citing to particular parts of materials in the record, or showing that materials cited do not establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).

The moving party has the burden of production to make a prima facie showing that it is

entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*. If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id*. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In most cases the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

In the instant motion, Defendants contend summary judgment is appropriate because: (1) Plaintiff's claims are barred by failure to comply with the mandated exhaustion requirements of the PLRA; (2) Plaintiff's grievances do not amount to violations of any constitutional right and are, thus, insufficient as a matter of law; and (3) Defendants are protected from suit by qualified immunity. (Defs.' Mot. Summ. J. 4-9.) The court will address each of the Defendants' contentions in turn.

**1. Plaintiff's Exhaustion of Administrative Remedies**

As an initial matter, Defendants contend that Plaintiff's claims are barred by failure to: (1) file and exhaust grievances with respect to his First and Eighth Amendment claims; and (2) name or identify any of Defendants Mohr, Tibbals, and Lazaroff in his four exhausted grievances. (Defs.' Mot. Summ. J. 5.)

Defendants correctly point out that an inmate seeking to bring an action with respect to prison conditions must first fully exhaust available administrative remedies before bringing the action in federal court. (Defs.' Mot. Summ. J. 4.) Dismissal of a prisoner civil rights complaint is appropriate where a prisoner "fails to exhaust his administrative remedies before filing a civil rights complaint in federal court, or only partially exhausts administrative remedies." *Hopkins v. Ohio Dep't of Corr.*, 84 F. App'x 526, 527 (6th Cir. 2003); 42 U.S.C. § 1997e(a). In order for a grievance to be fully exhausted, it must meet the requirements of the relevant prison grievance procedure. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).

As of the filing of Plaintiff's Complaint on May 9, 2013, the grievance relevant to Plaintiff's present claims had been exhausted as to Defendants Mohr and Tibbals. (Decl. Marc Bratton, Ex. B, ECF No. 51-2, at 27.) Plaintiff filed Grievance Manci-12-12-000042 ("Grievance 42") on December 6, 2012, through Manci's institutional grievance process alleging cruel and unusual

-8-

punishment and inappropriate supervision as a result of his classification as a Level 3B inmate. (Disposition of Grievance, ECF No. 1.1, at 1.) Grievance 42 was denied on December 13, 2012, and Plaintiff appealed. (*Id.*) The Chief Inspector affirmed the disposition of Grievance 42 on January 28, 2013. (Decl. Marc Bratton, Ex. B, at 27.) Any federal claims that could arise from the factual allegations described in Grievance 42 would have been exhausted at that time because no further actions seeking administrative remedies were available to Plaintiff. *See* Defs.' Mot. Summ. J. 5; *see also* Ohio Admin. Code 5120-9-3(K)(3) ("The decision of the chief inspector or designee is final.") Defendants are correct that Plaintiff's due process claim–described in Grievance 42 and relating to Plaintiff's classification as a Level 3B inmate–was previously dismissed by this court. (Order Den. Defs.' Mot. Relief, ECF No. 40, at 9.) However, Plaintiff's additional claims arising under the First and Eighth Amendments–also described in Grievance 42–were not dismissed. (*Id.* at 5-9.) Accordingly, Plaintiff fully exhausted available administrative remedies pursuant to the PLRA with respect to his First and Eighth Amendment claims before filing the present action.

Defendants further contend that any grievances exhausted by Plaintiff before the commencement of this lawsuit were improper because the grievances failed to specifically name Defendants. (Defs.' Mot. Summ. J. 6.) Defendants cite Ohio's grievance procedure where it provides, in relevant part, that "informal complaints and grievances must contain specific information; dates, times, places, the event giving rise to the complaint and, *if applicable*, the name or names of personnel involved and the name or names of any witnesses." Ohio Admin. Code 5120-9-3(K) (emphasis added). Though Defendants contend the lack of named offenders in Plaintiff's grievance precludes exhaustion, that interpretation of the Ohio Administrative Code does not take into account the nature of Plaintiff's grievance in the present action. Plaintiff's grievance is that the

"administrators created and enforced rules and regulations that violate the Constitution of the United States." (Pl.'s Resp. Defs.' Mot. Summ. J. 3.) Thus, Plaintiff's failure to specifically name Defendants in Grievance 42 is immaterial on the facts of this case. Plaintiff's description of the deplorable conditions in connection with his classification as a Level 3B inmate provided Defendants, administrators at Manci, with "enough factual context [such] that [D]efendants would be on notice" of Plaintiff's claims. *Leonard v. Mohr*, No. 2:11-CV-152, 2012 WL 423771, at *4-5 (S.D. Ohio Feb. 9, 2012). Indeed, the whole purpose of compliance with the Ohio grievance procedure is to ensure that any inmate "complaint provides institutional staff the opportunity to investigate the complaint and to take corrective action to address a valid complaint." Ohio Admin. Code 5120-9-3(K). Given their respective positions, Defendants Mohr and Tibbals cannot fairly contend that Plaintiff's allegations in Grievance 42 did not provide them with fair notice of a claim. On the contrary, "as the persons in charge, Defendants would have to be aware of such conditions, and they would be the *only* persons in a position to ameliorate them." (Order Den. Defs.' Mot. Dismiss, ECF No. 25, at 2) (emphasis added.) Accordingly, Plaintiff's claims are not barred with respect to Defendants Mohr and Tibbals and Defendants' motion for summary judgment due to lack of exhaustion of administrative remedies as to them is denied.

However, with respect to Defendant Lazaroff, the record clearly indicates that his employment with Manci commenced approximately five months after the filing of this action. (Decl. John Bond, Ex. C, at 1.) As a result, it would have been impossible for Plaintiff to fully exhaust any claims against him prior to the filing of this lawsuit. Accordingly, Defendant Lazaroff's Motion for Summary Judgment on all claims due to lack of exhaustion is granted.

Defendants Mohr and Tibbals (hereinafter, "Defendants") also contend Plaintiff is not

entitled to an effective grievance system and so any allegation as to Defendants' response, or lack thereof, to his letters does not state a claim for relief. Defendants are correct. The PLRA makes clear that "the failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under section 1997a or 1997c of this title." 42 U.S.C. § 1997e(b). Thus, to the extent Plaintiff is stating a cause of action for Defendants' failure to respond to his correspondence, Plaintiff has not stated a claim for relief. *Green v. Tudor*, 685 F. Supp. 2d 678, 691 (W.D. Mich. 2010) (plaintiff did not have a constitutional or statutorily protected right to a response to his correspondence). To clarify, it is the court's understanding that Plaintiff's main allegations with respect to the grievance system is that: (1) his grievance with respect to prison conditions as a result of his Level 3B classification were fully and properly exhausted prior to the commencement of this suit; and (2) Defendants' failure to address those issues and continued enforcement of the Level 3B policy resulted in the violation of his constitutional rights. Notwithstanding, Defendants' motion for summary judgment with respect to any claim of liability for failure to respond to Plaintiff's letters is granted.

## 2. Plaintiff's First Amendment Claims

Defendants contend that none of Plaintiff's allegations are sufficient to support a claim of the violation of any constitutional right. The court will address each of Plaintiff's constitutional claims in turn. This court has previously construed Plaintiff's pleadings to include two First Amendment claims: (1) interference with access to the courts; and (2) interference with telephone and mail communications. (Order Den. Defs.' Mot. Relief 5-7.)

### a. Access to the Courts

A prisoner's ability to access the courts is a fundamental constitutional right that "requires

-11-

prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Lewis v. Casey*, 518 U.S. 343, 346 (1996) (*quoting Bounds v. Smith*, 430 U.S. 817, 828 (1977)). While there is no *per se* right to a prison law library or legal assistance programs, these are "means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis*, 518 U.S. at 350 (*quoting Bounds v. Smith*, 430 U.S. at 825). The right to access the courts also extends to an inmate's right to communicate with his attorney. However, while prison officials must afford inmates meaningful access to their attorneys, "'prisoners do not have a right to any particular means of access, including unlimited telephone use.'" *Rouse v. Simpson*, No. 5:08 CV-P123-R, 2009 WL 5103628, at *3 (W.D. Ky. Dec. 17, 2009) (citing *Aswegan v. Henry*, 981 F.2d 313, 314 (8th Cir. 1992)). An inmate may bring a nonfrivolous claim "where the restricted access is such that the prisoner can demonstrate an actual injury." *See Colvin v. Schaublin*, 31 F. App'x 170, 172 (6th Cir. 2002). To be successful in proving a *Bounds* violation, a prisoner must show: (1) actual injury; and (2) conduct on the part of the defendant that goes beyond "mere negligence." *Lloyd v. Mohr*, No. 2:13-CV-1158, 2014 WL 111172, at *3 (S.D. Ohio Jan. 10, 2014) (citing *Lewis*, 518 U.S. at 354.) In addition, a right of access claim must "identify a nonfrivolous, arguable underlying claim." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353, 353 n.3). The underlying claim element may be satisfied by allegations in the complaint sufficient to give fair notice to a defendant, and "characteristically, the action underlying this sort of access claim will not be tried independently." (*Id.* at 416.)

Defendants contend Plaintiff's claim of a violation of the right to access the courts is insufficient as a matter of law because it fails to: (1) show any prejudice to a nonfrivolous court

proceeding; (2) describe an underlying cause of action; and (3) allege that Defendants' actions were intentional. (Defs.' Mot. Summ. J. 10.) The court agrees only with the first of these assertions. As this court has previously construed (Order Den. Defs.' Mot. Relief 5), the crux of Plaintiff's right of access to the courts claim is that Defendants' implementation, enforcement, and continued enforcement of the Level 3B policy resulted in the denial or cancellation of his law library passes and in the severe restriction of his ability to contact his attorney during working hours. (*See* Second Am.. Compl. ¶¶ 6, 15) ("My passes to the [l]aw [l]ibrary being cancelled and ignored by C.O.'s", "[w]e are not allowed on the phone during working hours."); *see also* Compl. 3-4 ("Due to double ceiling and overcrowding more than 50 inmates have to share 5 phones," "[o]ne to two phones are consistently out of order or turned off purposefully.") Additionally, throughout his submissions, Plaintiff alleges conditions as a result of the Level 3B policy that are relevant to his Eighth Amendment claim of cruel and unusual punishment, as well as his attempts to bring these conditions to the attention of Manci's administration. (*See, e.g.,* Second Am. Compl. ¶¶ 9, 15) ("I have literally had to file numerous Informal Complaints just to preserve my right to the law library to work on research for my Appeals and grievance process"; "[d]ue to this confinement I am subjected to violations of Administrative Rules 5120-9-4/5120-09 and Constitution of the United States of America Eighth Amendment Cruel and Unusual Punishment.")

On the basis of these factual allegations, the court construes Plaintiff's Eighth Amendment claims of cruel and unusual punishment as the underlying causes of action for his First Amendment access to the courts claim. Under this construction, a reasonable jury could find by a preponderance of the evidence that Defendants' authorization, enforcement, and maintenance of the Level 3B policy constituted conduct beyond "mere negligence." However, Plaintiff's claim ultimately fails because

he cannot show any prejudice to his own lawsuit. Restricted access to the law library cannot be equated with restricted access to the courts; it is but "one factor in a totality of factors bearing on the inmate['s] access to the courts which should be considered." *Walker v. Mintzes*, 771 F.2d 920, 931 (6th Cir. 1985). Here, the Plaintiff has not shown a constitutional deficiency such that he was unable to gain access to the legal materials needed to pursue his claim. (*Id.*) Accordingly, because Plaintiff cannot show that any barriers erected by Defendants prejudiced any nonfrivolous lawsuit, Defendants' motion for summary judgment with respect to Plaintiff's First Amendment access to the courts claim is granted.

### b. Telephone and Mail Access

In addition to access to the courts, inmates have a constitutional right to communicate with family and friends. *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994). However, an inmate "has no right to unlimited telephone use." *Id.* (quoting *Benzel v. Grammar*, 869 F.2d 1105, 1108 (8th Cir. 1989). On the contrary, "a prisoner's right to telephone access 'is subject to rational limitations in the face of legitimate security interests of the penal institution' and generally is to be determined by prison administrators, subject to court scrutiny for unreasonable restrictions." *Id.* (citing *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986); *Fillmore v. Ordonez*, 829 F. Supp. 1544, 1563-64 (D. Kan. 1993)). Additionally, the Sixth Circuit has noted that, "[a] prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003).

Defendants contend Plaintiff's claim of deprivation of familial association is not a cause of action under §1983. (Defs.' Mot. Summ. J. 13.) Defendants again misconstrue the nature of

Plaintiff's claim and the facts of this case. The two cases Defendants cite to support their position deal with factual circumstances significantly different from those in the case at bar; namely, a child's right to live with and/or be raised by a particular parent, and the deprivation of a child's right to familial association in connection with the consequences of corporeal punishment in public elementary schools. *Id.*; *see Sagan v. Summer Cty. Bd. of Ed.*, Nos. 3:09-CV-1003, 3:09-CV-1004, 3:09-CV-1005, 3:09-CV-1013, 3:10-CV-0075, 2013 WL 1438246, at *2 (M.D. Tenn. Apr. 9, 2014) (involving a claim of interference with familial association brought by/on behalf of a minor child); *LeFever v. Ferguson*, Nos. 2:11-CV-935, 2:12-CV-664, 2013 WL 3568053, at *14 (S.D. Ohio July 11, 2013) (same). Plaintiff's claim here deals with his First Amendment right as an incarcerated individual to maintain communication with his family and friends. (Second Am. Compl. ¶ 12) ("I have lost contact with my children because we are only allowed out of our cells while they are in school.") Because of the varying nature of the causes of action and the factual context, Defendants have failed to meet their burden of production for summary judgment. When construed liberally and viewed in a light most favorable to him, Plaintiff has alleged facts to support his claim that Defendants' enforcement of Level 3B policies led to interferences with his right as an inmate to communicate with his friends and family. Further, Defendants have failed to address the substance of Plaintiff's claim by showing any possible penological purpose for allowing Plaintiff access to telephone use only during his children's school hours. Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's First Amendment interference with right of communication with family and friends claim is denied.

### 3. Plaintiff's Eighth Amendment Claims

Plaintiff's remaining constitutional claims arise under the Eighth Amendment prohibition

against cruel and unusual punishment. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An

Eighth Amendment claim of cruel and unusual punishment consists of both objective and subjective

components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8

(1992); *Wilson*, 501 U.S. at 298; *Brooks v. Celeste*, 39 F.3d 125, 127-28 (6th Cir. 1994); *Hunt v.

Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992).

The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511

U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298. To satisfy the objective component of

an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing

a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; *Stewart v. Love*, 796 F.2d 43, 44 (6th

Cir. 1982), or that he has been deprived of the "minimal civilized measure of life's necessities,"

*Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The Constitution

"'does not mandate comfortable prisons.'" *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at

349). Rather, "routine discomfort 'is part of the penalty that criminal offenders pay for their offenses

against society.'" *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347).

To establish the subjective component of an Eighth Amendment violation, a prisoner must

demonstrate that the official acted with the requisite intent. *Farmer*, 511 U.S. at 834; *Wilson*, 501

U.S. at 297, 302-03. The plaintiff must show that the prison officials acted with "deliberate

indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at

834; *Wilson,* 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110

F.3d 1215, 1222 (6th Cir.1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996);

*Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir.1995). "[D]eliberate indifference describes

a state of mind more blameworthy than negligence." *Farmer*, 511 U .S. at 835. The plaintiff must

establish that "the official knows of and disregards an excessive risk to inmate health or safety; the

official must both be aware of facts which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

The Supreme Court has also emphasized that prisoners can rarely establish an Eighth Amendment violation from a combination of conditions of confinement that, in themselves, do not rise to the level of a constitutional violation. *Wilson*, 501 U.S. at 304-05 (internal citations omitted) ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."); *see also Thompson v. Cty. of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994); *Walker v. Mintzes*, 771 F.2d 920, 925-26 (6th Cir.1985).

Defendants contend that each of Plaintiff's claims relating to "inconvenience and discomfort" should be dismissed as a matter of law for failure to state a claim for relief. (Defs.' Mot. Summ. J. 11.) The court will examine each of Plaintiff's Eighth Amendment claims in turn.

### a. Showers

To the extent Plaintiff alleges the inability to take a hot shower as a constitutional violation, the court agrees with Defendants. (Second Am. Compl. ¶¶ 15-16.) Prisoners in general population are constitutionally entitled to a minimum of three showers per week, while those in administrative segregation–not in frequent contact with others–are entitled to one shower per week. *Walker*, 771 F.2d at 928, 928 fn.5 (affirming the district court's assessment of the minimum constitutional requirements for prison showers). Considering that Plaintiff shares a cell with another Level 3B inmate and still maintains frequent contact with other inmates, it is clear Plaintiff's Level 3B classification does not qualify him as an administrative segregation inmate for the purpose of determining minimum constitutional shower requirements. (Second Am. Compl. ¶ 11.) As a result, Plaintiff is entitled to a constitutional minimum of three showers per week. Institutional policy at Manci provides Plaintiff with shower guarantees above the constitutional minimum: inmates

assigned to a limited privilege housing assignment, such as Level 3B inmates, are entitled to a minimum of seven showers per week. (Admin. Rule 5120-9-09(C)(10), ECF No. 1-1, at 38.)

Here, Plaintiff has not alleged he is unable to take, at a minimum, three showers per week. Furthermore, while prisons are required to provide inmates with hot and cold water, there is no constitutional violation where the temperature of prison showers are sometimes either too hot or too cold. *See Skelton v. Bruce,* 409 F. App'x 199, 206 (10th Cir. 2010) (citing *Rhodes v. Laramie Cnty. Bd. of Cnty. Com'rs*, No. 94-8046, 1995 WL 539739, at *1 (10th Cir. Sept. 12, 1995) (opining there is no Eighth Amendment violation where inmates were forced to use showers that "produced water sometimes too hot and other times too cold.")) Plaintiff alleges that, due to prison overcrowding, only a small rotating number of inmates have access to hot water to shower on any given day. However, the ability to take a hot shower every day is not a constitutional requirement, and the lack of such an amenity fails to state a claim for which relief may be granted. Accordingly, Plaintiff has not met the objective standard of an Eighth Amendment violation and Defendants' Motion for summary judgment as to Plaintiff's inadequate shower claim is granted.

### b. Lack of Recreation

The Sixth Circuit and the lower courts have not set a minimum amount of time a prisoner must have access to outdoor recreation. *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (having to make a choice between exercise and showering did not state a constitutional claim); *Rodgers v. Jabe*, 43 F.3d 1082, 1086-87 (6th Cir. 1995) (determining that while prisoners have a general right to exercise where circumstances demand, there is no constitutionally mandated minimum); *Walker*, 771 F.2d at 927-28 (explaining that the constitutional threshold is whether the yard time restrictions are "totally without penological justification") (internal quotations omitted); *Carruthers v. Mills*, No. 06-2259-B/P, 2007 WL 676718, at *4 (W.D. Tenn. Mar. 1, 2007)

(determining that the Constitution does not guarantee inmates daily access to exercise outside of their cells); *Conyers v. Mich. Dep't of Corr.*, No. 5:06-CV-100, 2006 WL 2644990, at *6 (W.D. Mich. Sept. 14, 2006) (dismissing claim of inadequate exercise where "[p]laintiff does not allege that he is denied sufficient opportunity for exercise in order to maintain reasonably good health.") Indeed, recreation restrictions have been upheld even where a prisoner was granted only the amount of exercise necessary to walk from his dormitory to his work assignment. *Rogers v. Shelby Cty.*, No. 07-2122-JPM-TMP, 2008 WL 4006794, at *7 (W.D. Tenn. Aug. 25, 2008).

Here, Plaintiff alleges he was allowed one hour of recreation, one hour for his first shift for pod activities, one hour for his second shift for pod activities, and one additional hour[2] to walk to and from the Inmate Dining Room, sit down, and eat meals. (Second Am. Compl. ¶ 15.) Given relevant precedent, the court agrees with Defendants: Plaintiff's allotment of time for out-of-cell recreation meets minimum constitutional requirements. (Defs.' Mot. Summ. J. 11.) Accordingly, Plaintiff has failed to state a claim for which relief may be granted and Defendants' motion for summary judgment as to Plaintiff's lack of recreation claim is granted.

### c. Conditions of Overcrowding: Double Celling, Violence

For a prison overcrowding claim, a prisoner must allege "extreme deprivations" in order to trigger the Eighth Amendment. *Agramonte v. Shartle*, 491 F. App'x 557, 559-60 (6th Cir. 2012). The Constitution "does not mandate comfortable prisons" and prisons of Manci's type, which house serious offenders, cannot be free of discomfort due to unanticipated overcrowding caused by increased prison populations. *Rhodes,* 452 U.S. at 348-49. As a result, the Supreme Court has held that "double-celling" does not constitute the kind of unnecessary and wanton infliction of pain that

---

[2]     Albeit, Plaintiff alleges this additional hour only amounts to five minutes in practice.

violates the Eighth Amendment. *Rhodes*, 452 U.S. at 348-49; *Wilson,* 501 U.S. at 298. Thus, Plaintiff's allegation of "double-celling" with another Level 3B inmate fails to state a constitutional claim. Accordingly, Defendants' Motion for summary judgment with respect to Plaintiff's double celling claim is granted.

While overcrowding, in itself, does not state a constitutional claim, the consequences of overcrowding, such as significant increases in violence or other conditions intolerable for prison confinement may do so. *Rhodes*, 452 U.S. at 348. Without question, prison officials are required to "take reasonable measures to guarantee the safety of the inmates." *Agramonte*, 491 F. App'x at 559 (quoting *Farmer*, 511 U.S. at 832). Specifically, officials "have a duty...to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). However, the mere fact that a prison facility "house[s] some violent prisoners or that violence among inmates would sometimes occur does not establish an Eighth Amendment violation." *Hester*, 52 F. App'x 220, 223 (6th Cir. 2002) (citing *Woods v. Lecureux*, 110 F.3d 1215, 1225 (6th Cir. 1997)). Without some "longstanding, pervasive, well-documented, or expressly noted" evidence of inmate attacks, a prisoner cannot show a substantial risk of serious harm sufficient to meet the objective element of an Eighth Amendment violation. *Hester*, 52 F. App'x at 223 (quoting *Street*, 102 F.3d at 815).

Here, Plaintiff's alleges that increases in violence due to fights over showers, telephones, cleaning supplies, etc., has led to constant lockdowns within Level 3B cell units at Manci. (Second Am. Compl. ¶¶ 9-10, 16). Plaintiff also alleges increases in uses of force against inmates. (Second Am. Compl. ¶ 16.) However, as Defendants have noted, Plaintiff has failed to allege any specific injury to himself as a result of any violent conditions of overcrowding due to the Level 3B policy. (Defs.' Mot. Summ. J. 15.) Further, Plaintiff has not alleged that, in the event of violence, the

security practices and procedures in place at Manci were unreasonable or otherwise inadequate to re-establish control or guarantee the safety of the inmates. Accordingly, because the Plaintiff has failed to plead facts to satisfy the minimum pleading requirements for an Eighth Amendment claim based on prison violence and lack of safety, Defendants' Motion for summary judgment with respect to Plaintiff's claims of increases in violence caused by overcrowding is granted.

### d. Food Delay and Sanitation

The Sixth Circuit has held that the deliberate and unnecessary withholding of food essential to normal health can constitute the deliberate indifference to medical needs that violates the Eighth Amendment. *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009); *Cunningham v. Jones*, 567 F.2d 653 (6th Cir. 1977). For single daily meals, the daily requirement for an average sedentary man to maintain normal health is between 2000 and 2500 calories. *Welch v. Spaulding*, 627 F. App'x 479, 483 (6th Cir. 2015) (citing *Cunningham v. Jones*, 567 F.2d at 657). However, providing a single low-calorie meal to an otherwise well-fed prisoner is unlikely to cause malnutrition and therefore trigger a constitutional violation. *See Welch*, 627 F. App'x at 483. Here, Plaintiff alleges that, as the result of breakdowns and disruptions in food services, he often went fifteen hours between meals and, on one occasion, twenty-four hours between meals. (Second Am. Compl. ¶ 16.) When food was eventually served on the day Plaintiff went twenty-four hours without a meal, Plaintiff was given "1 apple 1 cup of tuna fish, 2 juices, 1 cup of cereal, and 3-4 slices of bread" as a replacement for three meals. (Compl. 5.) Plaintiff also alleges that meal replacements on other days were similarly deficient. *Id.* ("On many occasions we received one short bag as a replacement for 2-3 meals in the same day.") Defendants respond by merely asserting "there is no constitutional requirement that food be served hot or according to a prisoner's convenience." (Defs.' Mot. Summ. J. 12.) Defendants have failed to make any contentions as to the nutritional sufficiency of the meals that were served to

Plaintiff in any given twenty-four hour period. However, even if Plaintiff's caloric intake on the occasions at issue were deficient, Plaintiff has nonetheless failed to state a claim for relief because the occasional provision of low-calorie meals does not amount to a constitutional violation for an otherwise well-fed prisoner. *See Welch*, 627 F. App'x at 483. The food service disruptions described here occurred only on the several occasions Plaintiff was denied access to the inmate dining room due to security issues in other Level 3B units. (Second Am. Compl. ¶ 16.) As a result, Plaintiff has failed to allege the kind of prolonged nutritionally deficient diet necessary to give rise to an Eighth Amendment violation for food deprivation. *Welch*, 627 F. App'x at 483.

Plaintiff additionally alleges that food sanitation conditions at Manci were well below constitutional requirements. (Second Am. Compl. ¶ 16.) The Eighth Amendment requires the maintenance of reasonably sanitary conditions in the housing and food preparation and service areas. *Grubbs v. Bradley*, 552 F. Supp. 1052, 1123 (M.D. Tenn. 1982). Generally, "conditions must be sanitary enough so that inmates are not exposed to an unreasonable risk of disease." *Id.* (citing *Ramos v. Lamm*, 639 F.2d 559, 570-71 (10th Cir. 1980) (noting that the constitutional requires the provision of "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.")

Here, in addition to the general filthiness of the dining rooms, Plaintiff alleges being served spoiled food (including milk), food out of dirty containers, and food contaminated with hairs, insects, and other unidentified contaminates. (Second Am. Compl. ¶ 16.) On one occasion in particular, Plaintiff alleges he was prescribed diarrhea and food poisoning medication as a result of being served spoiled meat. (*Id.*) Plaintiff further alleges he was often served food from packages labeled "animal feed" and "animal/livestock oats." (*Id.*) Defendants fail to address any of Plaintiff's allegations regarding food sanitation except to rely on their assessment that the conditions at least did not

damage Plaintiff's health "but for one alleged instance of diarrhea." (Defs.' Mot. Summ. J. 12.) However, viewed in the light most favorable to the Plaintiff, the facts as alleged, if true, may support a finding of an Eighth Amendment violation resulting from unsanitary food conditions exposing Plaintiff to an unnecessary risk of disease. Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff's food sanitation claim is denied.

### e. Denial of Medical Treatment, a Winter Coat

Not all medical conditions are sufficiently serious to implicate the Eighth Amendment. *Comstock v. Mcrary*, 273 F. 3d 693, 702-03 (6th Cir. 2001) (quoting *Farmer*, 511 U.S. at 834). When an inmate alleges denial of medical treatment based on a delay in treatment, the seriousness of the deprivation is to be gauged "by examining the effect of the delay in treatment." *Napier v. Madison Cty., Ky.*, 239 F.3d 739, 742 (6th Cir. 2001). An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004) (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)). In cases involving complaints of a non-obvious serious need for medical care, the inmate "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Blackmore*, 390 F.3d at 898 (distinguishing the summary judgment requirements for obvious and non-obvious serious medical need claims) (quoting *Napier*, 238 F.3d at 742). This is because in cases involving a seemingly minor or non-obvious afflication, "medical proof is necessary to assess whether the delay caused a serious medical injury." *Blackmore*, 390 F.3d at 899.

Here, Plaintiff alleges he was denied a medical test to determine nerve damage following the loss of feeling in all four of his limbs. (Second Am. Compl. ¶ 16.) Plaintiff further alleges that the

damage was a result of the deplorable living conditions at Manci, which led to the aggravation of a bullet fragment trapped in Plaintiff's spine that may cause paralysis if removed. (*Id.*) However, Plaintiff has failed to introduce any medical verification of how the alleged denial or delay in medical treatment at Manci resulted in serious medical injury. Nerve damage is not an injury so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Bemer v. Corr. Med. Servs., Inc.*, No. 10-CV-12228, 2012 WL 511599, at *3 (E.D. Mich. Feb. 16, 2012) (finding a prisoner's broken toe was not a sufficiently obvious injury within the meaning of an Eighth Amendment violation where prison staff would have needed x-rays to determine the extent of the injury) (citing *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (finding that the symptoms associated with an asthma attack–wheezing, difficulty breathing, tightness in the chest–are sufficiently obvious and recognizable even to a lay person). Indeed, here, any alleged injury was sufficiently non-obvious so as to require prison staff to conduct a nerve damage test in order to determine whether Plaintiff had a serious issue. *Id.* Additionally, Plaintiff does not allege the facts surrounding the denial of the medical test, including whether medical personnel assigned to the Level 3B inmates were otherwise unresponsive to Plaintiff's medical needs, in order to meet the "wanton indifference" requirement of an Eighth Amendment violation. *Raheem v. Stout*, 101 F. App'x 603, 606 (6th Cir. 2004) (affirming dismissal of prisoner's inadequate medical care claim under the Eighth Amendment where he was not seen by a doctor for a broken ankle for eight days, and did not receive an x-ray for a month). Accordingly, Defendants' Motion for Summary Judgment with respect to Plaintiff's claim of denial of medical treatment is granted.

The failure to provide adequate winter clothing to inmates required to go outside during the winter months may constitute an Eighth Amendment violation. *Knop v. Johnson*, 977 F.2d 996, 1012-13 (6th Cir. 1992). However, uncomfortable temperatures inside cells is not actionable unless

it can be shown that the situation endangers inmates' health. *Grubbs v. Bradley*, 552 F. Supp. 1052, 1122-23 (M.D. Tenn. 1982). Here, Plaintiff alleges that one time in October during Superstorm Sandy, he was denied a winter coat. (Second Am. Compl. ¶ 16.) However, the one time denial of a winter coat by the quartermaster, without some showing of injury, is not a *per se* violation of the Eighth Amendment. *See Brown v. Timmerman-Cooper*, No. 2:10-CV-283, 2013 WL 430262, at *4 (S.D. Ohio Feb. 4, 2013) (finding that the one specific failure to provide a hooded sweatshirt alleged in the complaint when the inmate was not subjected to the severe weather conditions was not sufficient to show an Eighth Amendment violation). Plaintiff does not allege he was required to venture outdoors during the storm, nor does Plaintiff allege inadequate winter clothing during the winter months. *See, e.g.*, *Gordon v. Faber*, 973 F.2d 686 (8th Cir.1992) (affirming Eighth Amendment violation where prison official forced inmates outside in sub-freezing temperatures and refused to provide hats and gloves); *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009) (finding no Eighth Amendment violation even where inmate "was never issued certain clothing items, ...suffered from hurt ears and numbs hands, [and] felt frostbite and caught colds" because he could not show that he was forced to be in the cold for long periods of time or that he suffered anything other than the usual discomforts of winter). Because Plaintiff has not alleged any suffering other than the denial of the coat itself, Plaintiff has failed to state a claim of a violation of a constitutional right. Accordingly, Defendants' Motion for Summary Judgment with respect to Plaintiff's denial of a winter coat claim is granted.

### f. Lack of Programming

Finally, Plaintiff alleges that due to his status as a Level 3B inmate, he was unable to earn "good days" towards parole. (Pl.'s Resp. Defs.' Mot. Summ. J. 2.) Defendants argue prisoners have neither a constitutional nor an inherent right to a parole system and the mere possibility of parole

does not create a liberty interest in parole release. (Defs.' Mot. Summ. J. 13-14.) Defendants are correct. *See Greenholtz v. Inmates Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 11 (1979) (determining that a state may establish a parole system but has no duty to do so); *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987) (whether a state statute creates a liberty interest in parole release turns on the presence of broad discretion to the decision-maker); *Jago v. Van Curen*, 454 U.S. 14, 20-21 (1981) (determining that the Ohio state parole statute did not create a protected liberty interest); *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235-37 (6th Cir. 1991) (recognizing no relevant change in the law since *Jago*); Ohio Rev. Code Ann. § 2967.03. Thus, Plaintiff's lack of ability to earn good credit towards a parole system in which he does not have a liberty interest fails to state a constitutional claim for which relief can be granted. Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff's lack of programming claim is also granted.

### 4. Defendants' Assertion of Qualified Immunity

Defendants assert they are protected by qualified immunity against all of Plaintiff's claims. Qualified immunity is an affirmative defense and may be asserted as a bar "from liability for civil damages insofar as [an official's] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999). When asserted, the burden then shifts to the plaintiff to show that the defendant officials are not entitled to immunity. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). Two elements must be established to defeat an assertion of qualified immunity: (1) the defendant's conduct violated one of plaintiff's constitutional rights; and (2) the right was clearly established at the time of defendant's conduct. *Welch v. Spalding*, 627 F. App'x

479, 482 (6th Cir. 2015) (citing *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014)); *King v. Ambs*, 519 F.3d 607, 610 (6th Cir. 2008). Courts may consider these elements in any order; "if either one is answered in the negative, then qualified immunity protects the officer from civil damages." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The court finds that qualified immunity is not appropriate here. A reasonable jury could find that the Defendants violated clearly established constitutional rights of which a reasonable person would have known. First, as detailed above, a reasonable jury could find facts to support the allegations that Defendants interfered with Plaintiff's communication with family and friends and provided Plaintiff with food prepared under conditions grossly below food sanitation standards. Second, given the relevant precedent, a jury could find that these rights were ones which were both clearly established at the time of the alleged violations, and of the type which a reasonable person in Defendants' respective positions would have known. Accordingly, the court finds Defendants are not protected by qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, the court grants Defendants' Motion to file Amended Answers to Amended Complaint. (ECF No. 50.) The court grants Defendant Lazaroff's Motion for Summary Judgment (ECF No. 51) due to lack of exhaustion of administrative remedies with respect to all of Plaintiff's claims. However, the court grants in part and denies in part the Motion for Summary Judgment (ECF No. 51) with respect to Defendants Mohr and Tibbals. The court denies summary judgment due to lack of exhaustion with respect to all of Plaintiff's claims. Further, the court denies Defendants' Motion for Summary Judgment (ECF No. 51) with respect to Plaintiff's First Amendment access to telephone and mail services claim, and Plaintiff's Eighth Amendment claim of cruel and unusual punishment resulting from unsanitary food conditions. The court grants

Defendants' Motion for Summary Judgment (ECF No. 51) with respect to Plaintiff's First Amendment access to the courts claim and Plaintiff's Eighth Amendment cruel and unusual punishment claims resulting from inadequate showers, lack of recreation, conditions of overcrowding, food delay and deprivation, denial of medical treatment, denial of a winter coat, and lack of programming. Finally, the court denies Defendants' assertion of qualified immunity. (ECF No. 51.)

      IT IS SO ORDERED.


/S/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE


September 19, 2017